EDWARD HARRIS, plaintiff in error, vs. JNO. R. DYER, executor, defendant in error.

It is entirely competent for the Legislature to prescribe the mode by which the public domain shall be disposed of by the State; and if the law directs only a certificate to issue to the purchaser, as the evidence of his title, it is equally sacred as a grant.

A grant to land, the sale of which was not only not authorized by law, but suspended from the operation of the act under which it was sold, is void; and it is competent to make proof of this fact.

Ejectment, in Lee Superior Court. Tried before Judge ALLEN, at September Term, 1858.

This was an action of ejectment by the lessee of John Rawls and John R. Dyer, executor of Anthony Dyer, deceased, against Richard Roe, casual ejector, and Edward Harris, tenant in possession, for the recovery of lot of land, number one hundred and twenty-nine, in the thirteenth district of Lee, containing one hundred and seventeen acres.

Harris vs. Dyer, ex'or.

Plaintiff upon the trial, offered in evidence the following certificate, having proved the same to be genuine, and the signature thereto to be in the handwriting of William J. Davis, agent for the Central Bank of the State of Georgia, viz: GEORGIA, PULASKI COUNTY.

In pursuance of an Act of the General Assembly of the State of Georgia, passed on the 23d day of December, 1833, entitled "An Act, to alter and amend the tenth section of an Act, passed 19th December, 1829, in relation to the Central Bank of Georgia, and to provide for the sale and disposition of lands forfeited to the State," I, William J. Davis, agent of the Central Bank of Georgia, do hereby certify, that on the 5th day of May, 1834, number one hundred and twenty-nine, containing one hundred and seventeen acres, lying and being in the thirteenth district of Lee county, was set up and exposed to public sale in the town of Hawkinsville, according to the provisions of the before recited Act, when John Rawls, being the highest bidder, became the purchaser thereof, at the price of twenty-seven dollars. And I do further certify, that the said John Rawls has paid nine dollars, it being one-third part of the purchase money aforesaid, and that there remains to be paid to the Central Bank of Georgia, to complete the said purchase, the sum of eighteen dollars annually, for two years from this date.

(Signed,)        WM. J. DAVIS, Agent."

Upon which certificate was endorsed the following credit, in the handwriting of the said William J. Davis:

"CENTRAL BANK OF GEORGIA,
        Milledgeville, May 21, 1835.

Received eighteen dollars in full payment of the within certificate.        WM. J. DAVIS, Teller.

Also the following assignment:

"I transfer the within certificate to Anthony Dyer for value received.

(Signed,)        JOHN RAWLS."

Harris vs. Dyer, ex'or.

It was admitted that John R. Dyer was the executor of Anthony Dyer, and that the defendant Edward Harris, was in possession of the land in dispute, at the commencement of the action.

Here plaintiff rested.

Defendant offered and read in evidence, a grant from the State of Georgia, to G. Ticknor and Matthew Williams, for the land in controversy, dated 11th July, 1850: Said grant recites "that in pursuance of an Act of the General Assembly of this State, approved 26th January, 1850, authorizing the Governor to direct grants to issue to the *bona fide* owner of any square lot or fraction which was suspended from the operation of the Act approved 30th December, 1847, (upon certain conditions in said Act,) I have given and granted, and by these presents in the name and behalf of this State, do give and grant unto G. C. Ticknor and Matthew Williams, of the county of Lee," &c.

It was admitted that Harris, the defendant, had a regular chain of title from the grantees, and that he was a *bona fide* purchaser for valuable consideration, without notice of any outstanding title in plaintiff.

Plaintiff, in rebuttal, offered in evidence a copy certificate of the purchase of fraction number one hundred and twenty-nine, in the 13th district of Lee county, and the entries thereon, made by the Sheriff of Lee county, in which it is certified, that said Sheriff, under the provisions of an Act passed 30th December, 1847, on the 1st day of May, 1849, sold at public sale, fraction number one hundred and twenty-nine, in the thirteenth district of Lee, to George C. Ticknor and Matthew Williams, for the sum of fifty-one dollars, and that said purchasers shall receive a grant for the same upon the condition that they pay to Charles H. Rice, the agent of the State, one-third of the purchase money in cash, and the remaining two-thirds in equal installments, together with the sum of three dollars grant fees, &c.

Upon this copy certificate was endorsed the following entries:

" Received of George C. Ticknor and Matthew Williams, the purchasers of fraction number one hundred and twentynine, in the 13th district of Lee, seventeen dollars, the same being the cash payment on said fraction. 1st May, 1849.

    (Signed,)      CHAS. H. RICE, Agent."

" TREASURY DEPARTMENT, GA.,
       Milledgeville, 11th July, 1850.

$34.   Received of George C. Ticknor and Matthew Williams, purchasers, thirty-four dollars, the balance of purchase money in full, for the within described fraction, as per certificate No. 254, of this date.

    (Signed,)      WM. B. TINSLEY, Treas'r."

" EXECUTIVE DEPARTMENT,
       Milledgeville, July 11, 1850.

Let a grant issue to George C. Ticknor and Matthew Williams, of Lee county.

    By the Governor.

         B. F. GULLET, S. E. D."

To the introduction of this certificate and entries, defendant objected, on the ground that said certificate tended to contradict the grant, and that the grant being valid upon its face could not be attacked collaterally.

The Court overruled the objection and admitted the certificate, and counsel for defendant excepted.

There being no controversy as to the facts, the jury under the charge and direction of the Judge, found for the plaintiff, and counsel for defendant excepted.

SLAUGHTER & ELY; and HAWKINS, for plaintiff in error.

VASON & DAVIS, *contra.*

*By the Court*—LUMPKIN J. delivering the opinion.

The conflict of title in this case is between a certificate of
purchase, made of the sale of the lot of land in dispute by
the Central Bank, under the Act of 1833, (*Cobb*, 131,) and a
grant purporting to issue under the Act of 1850.  (*Cobb*, 714.)

The former being prior in point of time, will of course be
preferred, unless there be some law to prevent.

It is contended that the certificate must yield to the grant.
Why?  Is it not competent for the Legislature, to direct the
mode by which titles to the public domain, shall be convey-
ed by the State?  And if the Legislature has not prescribed
the issuing of a grant, in order to convey lands sold by the
Central Bank, is not the authentication of the purchase by
certificate, as complete as if made by grant?  We see noth-
ing to contravene this conclusion.  And such was the de-
cision of this Court in the case of McLeod and Dyer, decided
at this place, six months since, and not yet published.

But by the certificate of the Surveyor General of the State,
the introduction of which as testimony was objected to, but
which we hold was properly admitted, it turns out that the
grant instead of being made, suspended from the operation
of the Act of 1847, was issued on the sale of this lot, under
and by virtue of that very Act.  And by inspection of the
statute, it is evident that it was misconstrued by the Govern-
or; and that it gave no authority to sell this land.  *Cobb* 709.

Besides, the Act of 1850, (*Cobb* 714,) did not author-
ize a grant to issue to land *sold* under the Act of 1847,
as this lot was; but on the contrary, it directed grants to issue
to the *bona fide* owner of square lots or fractions, which were
" *suspended* from the operation of the Act of 1847."  There
is no authority therefore to issue this grant, there having been
none to sell the land.

If grants cannot be attacked in this State, either by *scire
facias*, or by bill in chancery, filed directly for that purpose

perhaps more latitude should be allowed to impeach them collaterally and by *aliunde,* or rather outside proof. The General Assembly has passed an Act, authorizing mistakes in grants to be proven by parol at law. This is, I was going to say, a step, but it is more, a *stride* in the direction indicated. And it is the duty of Courts to follow the lead rather than struggle to check and restrain the expression of the popular mind, as to any matter of public policy. By doing so, they keep the popular will under wholesome control. Whereas, by a different course, it overleaps all bounds, and in its wantonness sweeps away much that should have been preserved.

McDonald J. absent.